IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW DONLIN,

    Plaintiff,

vs.                                                                     CIV 17-0395 JCH/JHR

PETCO ANIMAL SUPPLIES STORES,
INC., A Foreign Profit
Corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Matthew Donlin's First Motion to Compel (Doc. 20) ("Motion") filed on July 31, 2017. The Court has considered the Motion, Defendant's Response to Plaintiff's First Motion to Compel (Doc. 26) ("Response") and the attached document submissions, and Plaintiff's Reply in Support of First Motion to Compel (Doc. 31) ("Reply"). Having thoroughly reviewed the parties' submissions and the relevant law, the Court finds that the Motion is well taken and should be granted.

### BACKGROUND

This case arises from an employment dispute in which Mr. Donlin alleges that Petco terminated his position as General Manager in violation of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the New Mexico Human Rights Act ("HRA"), as well as New Mexico common law retaliatory discharge. (Doc. 1-1 at 7-17). Specifically, Mr. Donlin alleges that he suffered "flare-ups" as a result of his medical conditions, which ultimately required him to take leave under the FMLA in February 2015. (*Id.* at 8-9, ¶¶ 7-9). He alleges that his doctor cleared him to continue working under certain limitations on May

1

15, 2015, and that he believed he was able to perform all of his prior duties without accommodations. (*Id.* at ¶ 10). However, when Mr. Donlin approached Petco regarding his return to work, Petco informed him that it would require Mr. Donlin to provide certification from his doctor that he had recovered 100%. (*Id.* at ¶ 11). Mr. Donlin further alleges that because Petco refused to reinstate him in his position, he was required to apply for Long Term Disability; however, the disability insurer denied Mr. Donlin's application because it determined that Mr. Donlin was in fact capable of performing his job duties. (*Id.* at ¶ 13-15). Thereafter, Petco allegedly required Mr. Donlin to complete a Reasonable Accommodation Packet as a condition of reinstatement. (*Id.* at ¶ 16.) Mr. Donlin filed a complaint for disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("HRB"). (*Id.* at ¶17). Petco ultimately terminated Mr. Donlin on January 9, 2016 after he refused to provide the documentation Petco demanded. (*Id.* at ¶ 18-20).

Mr. Donlin expounded discovery on Petco along with his summons and complaint. (Doc. 20 at 1). Petco mailed its answers and responses to Mr. Donlin's discovery requests on June 23, 2017. (Doc. 20-2 at 12). Upon reviewing Petco's responses and objections, Mr. Donlin's counsel contacted Petco's counsel to address some of the issues in the requests and responses. (Doc. 20-1 at ¶¶ 4-10). The parties were unable to resolve the discovery issues through these good faith communications pursuant to Fed. R. Civ. P. 37(a)(1).[1] During the good faith communication, Mr. Donlin purportedly offered to narrow the scope of his requests regionally to reduce any burden on Petco, but counsel for Petco did not respond to this offer. (Doc. 20-1 at ¶¶ 8, 11-13). Mr.

---

[1] Plaintiff attaches a declaration to the Motion asserting that counsel exchanged emails and set up a telephone conference with Petco's counsel in which they discussed Petco's objections to Plaintiff's discovery requests. (Doc. 20-1). Petco does not contest that such communications occurred. The Court therefore finds that Plaintiff complied with the requirement in Fed. R. Civ. P. 37(a)(1) that Plaintiff has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

Donlin then filed this Motion to Compel, in which he requested the Court to compel Petco to fully respond to the following Interrogatories and Requests for Production:

- Interrogatory No. 6 and Requests for Production Nos. 18 and 19, which request "the name and full contact information of all persons involuntarily terminated from Petco's employ due to a failure to return to work following a Family and Medical Leave Act," including: (1) the store at which the person was employed at the time; and (2) the date of the termination," and requests all termination documents for such employees who failed to request an accommodation or obtain a certification of 100% recovery.

- Interrogatories Nos. 7 and 9 and Requests for Production Nos. 21 and 23, which request the identity and "contact information for all persons who, since January 1, 2013, have asserted a verbal or written complaint that Petco interfered with, restrained, or denied them their rights pursuant to the Family and Medical Leave Act," or "the Americans with Disabilities Act or any comparable state law," and all documents related to such claims, including Petco's investigation of such claims.

- Interrogatories Nos. 8 and 10 and Requests for Production Nos. 20 and 22, which request the identity and "contact information for all persons who, since January 1, 2013, have asserted a complaint with a governmental agency or court complaining that Petco interfered with, restrained or denied them their rights pursuant to the Family and Medical Leave Act," or "the Americans with Disabilities Act," or any comparable state law, and all documents related to such claims.

In response to each of the above-listed Interrogatories and Requests for Production, Petco responded with the following identical objections:

> [the respective discovery request] seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. According to the restrictions placed on Mr. Donlin by his treating physician, Mr. Donlin was unable to perform the essential functions of his job. The circumstances of other Petco team members [as identified in the relative discovery request] is (sic) wholly unrelated and irrelevant to Mr. Donlin's allegations. Defendant further objects to this [discovery request] as overly broad and unduly burdensome because it is not reasonably limited to the relevant circumstances of Mr. Donlin's employment, geography, or decision-maker. Petco employs more than 25,000 partners and operates more than 1,500 Petco locations across the U.S., Mexico, and Puerto Rico and providing this information places an unreasonable burden on Petco that is not proportionate to any relevance in this case.

In his Motion, Mr. Donlin argues that Petco's objections to these requests are invalid, because discovery in employment discrimination litigation is broad and Mr. Donlin's requests

are relevant to Petco's "pattern or practice of discrimination or retaliation." (Doc. 20 at 3). He contends that "company-wide discovery is necessary and appropriate where a company-wide policy is involved or the pertinent decisions on behalf of the company were made by officials with company-wide responsibility." (*Id.* at 5).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Parties may issue interrogatories pursuant to Rule 33 or request the production of documents pursuant to Rule 34 that are within the scope of Rule 26(b). Fed. R. Civ. P. 33(a)(2); Fed. R. Civ. P. 34(a). A responding party may object to a discovery request; however, the ground for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). A party objecting to a request for production must also "state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). A party may move to compel the answer to an interrogatory under Rules 33 or 34 if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iii).

## ANALYSIS

### I. **Plaintiff's Discovery Requests Are Not Overly Broad and Unduly Burdensome**

In his discovery requests, Mr. Donlin has requested company-wide information from January 1, 2013 concerning three closely-related categories of information and documents: (1) internal and external FMLA and ADA complaints by other Petco employees and Petco's investigations of these complaints; (2) government agency and civil court complaints concerning FMLA and ADA violations by other Petco employees; and (3) information and "termination documents" for other Petco employees who, prior to termination, had recently filed an FMLA claim. For each of these requests, Petco asserted a blanket general objection that each of these requests is overly broad and unduly burdensome, and provided no response to the subject requests and interrogatories.[2] Petco argues that discovery should be limited to similarly-situated employees, which, it argues, is limited to "individuals who did not return to work after a medical leave of absence due to a failure to provide adequate medical certification." (Doc. 26 at 11).

For discovery purposes, information sought need not be admissible, but must appear "reasonably calculated to lead to the discovery of admissible evidence." *Miller v. Regents of Univ. of Colorado*, 188 F.3d 518, *13 (10th Cir. 1999) (unpublished) (quoting Fed. R. Civ. P. 26(b)(1)). Plaintiffs in employment discrimination cases are allowed extensive discovery to prove their cases. *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 981 (10th Cir. 1996); *see also*, *Heward v. W. Elec. Co.*, No. 83-2293, 1984 WL 15666, at *6 (10th Cir. July 3, 1984) ("[I]n alleged discrimination cases the discovery scope is extensive; so extensive, that if the information sought promises to be *particularly cogent* to the case, the defendant must be required to shoulder the burden.") (internal quotation omitted) (emphasis in original). In shaping

---

[2] In failing to state whether there are any responsive documents to Plaintiff's discovery requests, Petco has failed to comply with Fed. R. Civ. P. 34(b)(2)(C).

the scope of discovery in these cases, the court has broad discretion to balance the rights and needs of the plaintiff employee and defendant employer. *Burks*, 81 F.3d at 981.

### A. Mr. Donlin Is Entitled to Relevant Company-Wide Discovery for All Disputed Discovery Requests.

The relevant question in all employment discrimination cases is "'whether the defendant intentionally discriminated against the plaintiff.'" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). The relevant framework for discrimination cases was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Id.* (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Therefore, it is a general rule that evidence regarding the defendant employer's treatment of other employees is relevant to the issues of the employer's discriminatory intent, whether there is a pattern of retaliatory behavior, or the employer's credibility in its assertion of legitimate motives. *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998).

One limitation of this rule allowing discovery of other employees' complaints regarding the same supervisor is that the complaints must be "similar in nature and close in time to plaintiff's experiences." *Miller*, 1999 WL 506520, *14 (reviewing admissibility of evidence of other employee's complaints regarding the same supervisor). Generally, such information is relevant if it can "logically or reasonably be tied to the decision to terminate the plaintiff." *Curtis*, 147 F.3d at 1217 (quoting *Spulak,* 894 F.2d at 1156) (internal markings omitted).[3]

---

[3] Defendant also cites *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006), *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997), *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000), *MacKenzie v. City & Cty. Of Denver*, 414 F.3d 1266 (10th Cir. 2005), and *Green v. New Mexico*, 420 F.3d 1189 (10th Cir. 2005) in its Response for assessing the scope of the definition of "similarly situated;" however, these cases address the standard for determining whether employees are similarly situated for purposes of summary judgment, not for the

However, a single plaintiff is not necessarily limited to discovery by a particular supervisor or location. Evidence of discrimination by other supervisors may be relevant depending on the facts of the case and in considering "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). The geographic scope of discovery naturally focuses on "the source of the complained discrimination-the employing unit or work unit." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653 (D. Kan. 2004) (citing *Heward v. W. Elec. Co.*, No. 83-2293, 1984 WL 15666, at *6 (10th Cir. 1984) (per curium). The geographic scope may be expanded, however, if the plaintiff demonstrates that the information is particularly cogent or a particularized need in the matter; if, for example, the information establishes a pattern of discrimination, or the defendant employer's motive or intent is at issue. *Johnson*, 238 F.R.D. at 653; *Owens*, 221 F.R.D. at 653. In addition, discovery may be limited to a plaintiff's employing unit unless there is evidence that "there were hiring or firing practices and procedures applicable to all the employing units." *Owens*, 221 F.R.D. at 653. In making this determination, courts generally consider "the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees." *Id.* at 654 (citing *EEOC v. Kansas City S. Ry.*, 2000 WL 33675756, at *4–5 and *Bryant v. Farmers Ins. Co.*, No. 01–02390–CM, 2002 WL 1796045, at *3 (D.Kan. July 31, 2002)); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1257–58 (D. Kan. 2008).

For example, in *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, a case factually analogous to Mr. Donlin's complaint, the employee plaintiff had requested

---

discoverability of employees who might be similarly situated, and therefore apply a different standard that is not relevant for purposes of discovery.

company-wide documents and information regarding the identity of all employees who had requested FMLA leave within one year of termination with the defendant employer. 586 F. Supp. 2d at 1255-56. The defendant employer objected on the grounds that company-wide information was overly broad. *Id.* at 1256. However, because the company had a single human resources department for the entire company which handled all FMLA requests and the decision maker who terminated the plaintiff was not within her employing unit, the scope of discovery was expanded to be company-wide and the defendant employer was ordered to produce company-wide documents. *Id.* at 1258.

Similarly, Petco appears to have a company-wide decision making team responsible for all employees' requests. In the Declaration of Suzanne Nordmann in Support of Defendant's Response to Plaintiff's First Motion to Compel attached to Petco's Response, she attests that she is Petco's Employee Relations Manager and that Mr. Donlin's supervisors were District Manager Rick Coughlin and Regional Human Resources Partner Matthew Hazlett. (Doc. 26-1 at ¶¶ 2, 10). However, Petco does not assert which supervisor made the pertinent decisions related to Mr. Donlin's FMLA leave, accommodation, and termination,[4] and the exhibits attached to Petco's Response indicate that a centralized "Petco Leave and Accommodation Team" submitted correspondence to Mr. Donlin detailing the decisions regarding his requests for leave, accommodation, and reinstatement. (Doc. 26-2 at 11-12, Doc. 26-3 at 3-4, 16-17, 22-23, and Doc. 26-4 at 2-4, 24-26, and 49). Nothing from Petco's exhibits indicates that these decisions

---

[4] Even if the decisions are made regionally, it is unclear under which region Petco claims Mr. Donlin falls. District Manager Rick Coughlin is responsible for "District 52," which includes 18 stores in New Mexico and Texas, while Regional Human Resources Partner Matthew Hazlett is responsible for "Region 22," which includes 286 stores in Alabama, Colorado, Florida, Louisiana, Mississippi, New Mexico, Oklahoma, South Dakota, Texas, Wyoming, and Puerto Rico. (Doc. 26-1 at ¶¶ 11-12). Thus, it appears that there is not one specific management region under which Mr. Donlin falls, and moreover, Petco does not assert that either Mr. Hazlett or Mr. Coughlin actually made the relevant employment decisions regarding Mr. Donlin.

8

concerning Mr. Donlin were made by a supervisor in Mr. Donlin's "employing unit."[5] Instead, it appears that "all Petco employees are subject to the same leave of absence policies," and the analysis for granting employees' leave is conducted by the corporate Leave of Absence & Accommodations ("LOA/ADA") team, which merely "involves regional and local persons." (Doc. 26-1 at ¶¶28-29). Therefore, as in *White*, 586 F. Supp. 2d 1250, because the LOA/ADA Team apparently handles all FMLA requests for the entire company and the LOA/ADA Team is not located specifically within Mr. Donlin's "employing unit," he is entitled to seek discovery of relevant company-wide documents.

Further, Mr. Donlin has articulated that information and documents concerning other Petco employees who have filed internal or external FMLA or ADA claims or who were terminated because they chose to exercise their FMLA rights would be "probative of Petco's motivation for its treatment of Plaintiff" and "whether Petco applied its policies uniformly." (Doc. 31 at 3). He has thus also demonstrated that this information is "particularly cogent" to his claim. *Johnson*, 238 F.R.D. at 653.

In addition, despite Petco's attempt to recast Mr. Donlin's allegations in its own favorable light, Interrogatory No. 6 and Requests for Production Nos. 18 and 19, in which Mr. Donlin requests information regarding all persons "involuntarily terminated from Petco's employ due to a failure to return to work following a Medical Leave Act [claim]," are substantively parallel to Petco's more limited definition, albeit cast in a light favorable to Mr. Donlin's allegations. As such, Petco's objection that Mr. Donlin's requests are not sufficiently "similarly-situated" is without merit.

---

[5] Mr. Donlin was employed as the General Manager at Petco Store No. 1111 in which he was "responsible for all aspects of store management." (Doc. 26-1 at ¶¶ 6-7). As such, it is also unclear whether Mr. Donlin actually had a supervisor within this "employing unit" (Store No. 1111) on which to base his discovery requests for similarly-situated employees under the same supervisor.

**B. Petco Has Not Demonstrated That the Discovery Requests Are Unduly Burdensome.**

Petco repeatedly states that it has "25,000 partners and operates more than 1,500 locations across the United States and Puerto Rico,"[6] (Doc. 26-1 at ¶31; Doc. 26 at 2, 12), that it has various mechanisms for employees to submit internal complaints (*id.* at ¶¶ 32-37), and external complaints are handled by "the Employee Relations Team." (*Id.* at ¶38). However, Petco also states that "[i]nternal complaints received by an employee directly contacting a human resources or management representative are generally handled by the individual who receives the complaint," and "any notes taken [by the representative] are maintained on the team's shared drive in a folder created for the specific complaint." (Doc. 26-1 at ¶¶ 35-36). Further, Petco admits that external complaints are "tracked on spreadsheets maintained by the Employee Relations department or the Legal department," including data regarding "the type of claim (i.e., disability discrimination)." (*Id.* at ¶ 39). As such, the documents requested by Mr. Donlin appear to be readily available, whether or not they are "searchable." (Doc. 26 at 13).

Mr. Donlin is not requesting the employee records of the 25,000 "partners" employed by Petco; instead, he seeks very limited information concerning FMLA and ADA complaints made by other employees for a limited scope of time.[7] Accordingly, it will not be unduly burdensome for Petco to respond to any of Mr. Donlin's requests.

**II.      Investigation documents (RFPs 20-24) are not attorney-client privileged.**

Finally, Petco argues that Requests for Production Nos. 20-24 are protected by the attorney-client privilege and/or attorney work product doctrine.[8] (Doc. 26 at 17, 18). Requests for

---

[6] In its original discovery responses, Petco also includes Mexico as part of its operations. (Doc. 20-2 at 2, 3, 4, 5, 6; Doc. 20-3 at 2, 3, 4, 5, 6).
[7] However, Interrogatory No. 6 differs from the other discovery requests in that it does not specify a limited scope of time, i.e. since January 1, 2013. The Court therefore directs Plaintiff to amend Interrogatory No. 6 to limit the answer to terminations occurring since January 1, 2013.
[8] The Court notes that the responses to RFP Nos. 20-24 do not reference any privilege log, and no privilege log was attached to the parties' briefing as required by Fed. R. Civ. P. 26(b)(5). To the extent that any responsive documents

Production Nos. 20 and 22 request all documents relating to internal or external claims by Petco employees brought pursuant to either FMLA or the ADA since January 1, 2013. Requests for Production Nos. 21 and 23 request documents relating to Petco's internal investigations of employees' ADA and FMLA claims. (*Id.* at 18). Petco argues that "legal counsel is regularly involved in the assessment of alleged violations" of the ADA or FMLA and as such, this information is "protected from disclosure by the attorney-client and/or attorney work product privileges." (*Id.*at 17, 18).

However, Petco cites no authority that the involvement of an attorney in the assessment of documents automatically qualifies the documents as attorney-client privileged. Instead, for the privilege to exist, "not only must the lawyer be functioning as an advisor, but the advice given must be predominantly legal, as opposed to business in nature." *Equal Employment Opportunity Comm'n v. Bok Fin. Corp.*, No. 11-1132 RB/LFG, 2013 WL 12047029, at *4 (D.N.M. Jan. 25, 2013) (quoting Discovery Proceedings in Federal Court, § 28.03, p. 246). In assessing internal and external complaints, Petco's legal counsel are acting for the purpose of Petco's business, not as a legal advisor nor in anticipation of litigation. Even if the privilege applies, the privilege does not protect the underlying facts within them. *Id.* As such, Petco must at least disclose the underlying facts in the documents it claims to be privileged.

Petco merely argues that legal counsel assesses the ADA and FMLA claim, not that an attorney has created the relevant documents in anticipation of litigation or as a privileged communication with a client. Instead, because the documents would have been created regardless of whether Petco anticipated the cases would be litigated, neither the work product doctrine nor attorney-client privilege applies to this classification of documents. *Id.* at *5. However, upon

---

qualify as privileged pursuant to Rule 26, Petco is directed to provide Mr. Donlin with a privilege log detailing the basis for the claimed privilege.

supplementing its responses, Petco may find that some of the responsive documents qualify as attorney-client privileged. The Court will not preclude Petco from asserting a valid attorney-client privilege objection in its supplemental responses, but Petco must produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5), providing its reasoning for asserting the privilege.

### III. Petco Is Required to Pay Mr. Donlin's Expenses in Filing His Motion to Compel

Mr. Donlin's Motion being granted in full, pursuant to Federal Rule of Civil Procedure 37(a)(5), Petco must pay Mr. Donlin's reasonable expenses incurred in making the motion, including attorney's fees. Because Petco refused to provide any response or produce any documents in its initial objections, failed to produce a privilege log for its asserted attorney/client privilege objection, and apparently failed to negotiate in good faith to resolve these discovery disputes by considering Mr. Donlin's compromise for limiting discovery by region, Petco was not substantially justified in its position. Fed. R. Civ. P. 37(a)(5)(A)(ii).

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (Doc. 20) is granted. Within fourteen (14) days of this Order, Defendant Petco, Inc. must:

(1) Provide answers to Plaintiff's Interrogatories Nos. 6 (limited to claims brought since January 1, 2013), and 7, 8, 9, and 10;

(2) Produce all documents responsive to Plaintiff's Requests for Production Nos. 18, 19, 20, 21, 22, and 23 to the extent that the document does not otherwise qualify as privileged pursuant to the attorney-client/work product doctrine;

(3) For each document not produced which Defendant has a good faith basis for asserting attorney-client/work product privilege, produce a detailed privilege log pursuant to Fed. R. Civ. P. 26(b)(5);

(4) Pay Mr. Donlin's expenses incurred in making this Motion, including attorney's fees. Mr. Donlin is directed to file an affidavit within seven (7) days, detailing all expenses and attorney's fees associated with making his Motion to be approved by the Court.

					_____
					UNITED STATES MAGISTRATE JUDGE