**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MATTHEW J. DONLIN,

    **Plaintiff,**

v.                                    CASE NO. <u>1:17-cv-00395-JCH-JHR</u>

PETCO ANIMAL SUPPLIES
STORES, INC., a Foreign
Profit Corporation,

    **Defendant.**

<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Matthew J. Donlin, pursuant to Fed.R.Civ.P. 56, submits this Response to Defendant's Motion for Summary Judgment. Genuine issues of material fact exist on all of Plaintiff's claims, thereby precluding summary judgment. The motion should be denied.

    **I.**    **PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS ("DMF")**

Plaintiff disputes the following facts in Defendant's Statement of Undisputed Facts ("SUF"): 4, 5, 6, 8, 9, 18, 19, 20, 22, 23, 25, 26, 28, 33, 34, 36, 37 and 38 for the reasons set forth below.

    1.    Disputing SUF 4:    Plaintiff was available to help other store employees with tasks, but was never required to do so. Plaintiff's duties were to supervise other store employees and otherwise manage all operations of the store. When he was able, Plaintiff helped out other team members as a matter of team morale, but there were always other employees in the store available to perform duties such as unloading merchandise, moving merchandise, stocking shelves and assisting customers. *See Deposition of Plaintiff Matthew J. Donlin ("Plaintiff's Depo."), pp. 31:22-25, 32:23-33:3, 37:3-39:2, 39:18-41:10 and 126:15-127:25, attached hereto as* **Exhibit 1***; see also Deposition of Christina Puente-Sandoval ("Puente-Sandoval Depo."), p. 25:10-18, attached hereto as* **Exhibit 2***.*

    2.    Disputing SUF 5:    The General Manager job description includes "Move merchandise up to 50 pounds" as an "Essential Job Function" and in the Work Environment section states that "this position requires bending, kneeling, moving merchandise (up to 50

pounds, as necessary) and standing for long periods of time . . . ." However, nowhere in the job description does it indicate that the General Manager is required to perform manual labor or has the responsibility to perform the duties of a non-supervisory team member. Indeed, all of the Duties and Responsibilities set forth in great detail in the job description describe managerial responsibilities (e.g., management of employees, complaint resolution, etc.). *See Plaintiff's Depo. Ex. 1, pp. 3-6, attached hereto as* ***Exhibit 3***.

3.    Disputing SUF 6:    The description of the Customer Service job responsibility from Plaintiff's job description does not state that Plaintiff was required to engage in any manual labor. It states:

> Ensure quick and courteous service to all PETCO customers by helping associates determine the customer's needs and by sharing product knowledge with associates to enable them to suggest the appropriate merchandise to meet the customer's needs. Demonstrate effective suggestive selling techniques for associates to increase sales.

*See* ***Exhibit 3***, *Plaintiff's Depo. Ex. 1, p. 4*. Plaintiff testified that if he was available and able, he would use a ladder to get a product off a high shelf, assist customers move merchandise to their cars and move merchandise up to 50 pounds, but he testified that he was never required to do any of these tasks because other employees were available to provide these services. *See* ***Exhibit 1***, *Plaintiff's Depo., pp. 39:18-40:22, 42:9-19, 126:15-127:25, 159:20-160:15 and 288:14-289:9*.

4.    Disputing SUF 8:    Plaintiff testified that his fibromyalgia affected his ability to perform the enumerated tasks when he was in a flare up. Plaintiff's treating physician, Dr. Nunez, testified that Plaintiff's condition varied from day to day and that he was able to work and perform normal daily functions when he was not in a severe flare up. *See* ***Exhibit 1***, *Plaintiff's Depo., pp. 46:22-48:14, 76:9-78:5 and 285:15-286:12; see also Deposition of Sharon Nunez, M.D. ("Dr. Nunez Depo."), pp. 26:12-28:2, 38:23-40:8, 46:15-47:2 and 138:4-139:16, attached hereto as* ***Exhibit 4***.

5.    Disputing SUF 9:    In early 2015, Plaintiff experienced a flare up in his fibromyalgia. His physician advised him to take a leave to allow the flare up to resolve. *See*

*Exhibit 1*, *Plaintiff's Depo., pp. 74:6-21, 77:18-78:5 and 78:19-79:23; see also* **Exhibit 4**, *Dr. Nunez Depo., pp. 22:21-25:2, 26:12-28:2 and 65:9-68:22.*

6.      Disputing SUF 18:     Plaintiff was given two choices: either submit a 100% fitness for duty Return to Work Release (i.e. a Return to Work Release without restrictions) or not be returned to work. Plaintiff's physician completed a Return to Work Release form for him specifying a number of physical restrictions. Petco did not engage in any interactive process with him. Puente-Sandoval checked with the HR Business Partner responsible for his store and that person, without checking with Plaintiff at all, simply indicated that Plaintiff's restrictions could not be accommodated. *See* **Exhibit 1**, *Plaintiff's Depo., pp. 100:25-102:21 and 103:10-25; see also* **Exhibit 2**, *Puente-Sandoval Depo., pp. 8:5-25, 9:4-18, 18:15-19:13, 20:10-22:14, 32:25-34:5 and 36:2-17*; *see also Plaintiff's Depo. Ex. 10, pp. 29-31, attached hereto as* **Exhibit 5**.

7.      Disputing SUF 19:     Petco's leave and accommodations team had no input on the decision of whether or not Plaintiff would be returned to work in May 2015. Instead, Puente-Sandoval emailed Plaintiff's work restrictions to the HR Business Partner responsible for Plaintiff's store, along with the District Manager. There is no indication that the HR Business Partner or District Manager looked at Plaintiff's circumstances, his restrictions as a whole or the size of the store he managed. Petco's Leave and Accommodation team simply approved Plaintiff for leave through August 2015 because his restrictions couldn't be accommodated. *See* **Exhibit 2**, *Puente-Sandoval Depo., pp. 18:15-19:13 and 20:10-22:14; see also* **Exhibit 5**, *Plaintiff's Depo. Ex. 10, pp. 27-29.*

8.      Disputing SUF 20:     Plaintiff was simply informed that he would not be returned to work. He was not provided with any information as to what restrictions prevented him from returning to work. While Plaintiff is not aware of any written Petco policy requiring an employee to certify that he is 100% fit-for-duty before returning to work, he was so informed by Daniel Bleau, his acting District Manager at the time. There was no interactive process utilized in making the determination that Plaintiff would not be returned to work in May 2015. Plaintiff had actually initiated the "interactive process" at this point. When Ms. Puente-Sandoval informed

Plaintiff he would not be able to return to work, Plaintiff verbalized his confusion and frustration by asking "so you are saying that after 11 years with Petco, I am losing my job because I have a disability?" Plaintiff then went even further in the "interactive process" – following his complaint with Ms. Puente-Sandoval, Plaintiff filed an ethics complaint and then exchanged emails with Petco's Vice President of Operations, Randy Chambers, regarding his concerns and frustrations that Petco was not allowing him to return from leave. The only follow-up Plaintiff received after being informed that he would not be able to return to work was a letter, which informed Plaintiff that his leave was being extended because there were "no reasonable accommodations" available to him. At that time, Petco had not opened up any conversations with Plaintiff about the possibility of providing him with accommodations. *See **Exhibit 1**, Plaintiff's Depo., pp. 100:25-102:21, 103:10-25, 104:21-105:10, 130:23-132:16, 133:22-136:2, 136:16-137:1 and 210:21-211:16; see also Plaintiff's Depo. Ex. 15, attached hereto as **Exhibit 6**; see also Declaration of Matthew J. Donlin ("Plaintiff's Declaration"), attached hereto as **Exhibit 7**; see also **Exhibit 2**, Puente-Sandoval Depo., pp. 33:19-34:5.*

9.    Disputing SUF 22:    There is no evidence as to what considerations played into the decision by the HR Business Partner or District Manager that Petco could not return Plaintiff to work with the restrictions suggested by his physician. Literally, all the evidence there is, is that the restrictions were provided to the HR Business Partner and the District Manager and that the leave team then informed Plaintiff that the restrictions could not be accommodated. Furthermore, the evidence is that Plaintiff accepted further leave because Petco refused to return him to work. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 18:15-19:13 and 20:10-22:14; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 27-29; see also **Exhibit 1**, Plaintiff's Depo., pp. 132:21-133:14 and 143:12-144:2.*

10.    Disputing SUF 23:    The quotation from Dr. Nunez' notes is accurate, but Defendant fails to disclose that in her deposition Dr. Nunez provided context for the quoted comment. She testified that Plaintiff contacted her and arranged for visits when his symptoms were particularly severe, that his condition frequently changed rapidly, sometimes in only a day,

and that Plaintiff's symptoms on a single day cannot therefore be generalized over an extended period of time. *See **Exhibit 4**, Dr. Nunez Depo., pp. 44:4-21, 46:15-47:2, 61:3-25, 86:23-87:25, 119:12-121:14, 139:2-16 and 140:4-141:9.*

11.    Disputing SUF 25:    While it is accurate that Petco again offered and Plaintiff again accepted a continuation of his leave, he did so because Petco refused to return him to work. Plaintiff submitted the Return to Work Release to Petco in August 2015 because he sought to return to work and believed that he could perform the essential functions of the General Manager job. The HR Business Partner, without seeking any clarification on any of Plaintiff's restrictions, provided Puente-Sandoval with a one-line email stating that Petco was unable to accommodate Plaintiff's restrictions without specifying which restrictions prevented Plaintiff from returning to work. Again, there is no indication that the HR Business Partner looked at Plaintiff's circumstances, his restrictions as a whole or the size of the store he managed. *See **Exhibit 1**, Plaintiff's Depo., pp. 155:3-21 and 162:9-163:14; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 24-26; see also **Exhibit 2**, Puente-Sandoval Depo., pp. 46:5-49:6, 49:12-18 and 49:21-52:13.*

12.    Disputing SUF 26:    Although during Opposing Counsel's direct examination of Plaintiff, Plaintiff conceded that he had applied for long term disability insurance benefits, during his cross-examination Plaintiff clarified that he had not actually applied for long term disability insurance benefits. The records reflect that upon expiration of Plaintiff's short-term disability benefits, the disability carrier (UNUM) itself began considering whether Plaintiff qualified for long-term benefits. *See **Exhibit 1**, Plaintiff's Depo., pp. 183:17-21 and 283:2-20.*

13.    Disputing SUF 28:    It is accurate that UNUM denied Plaintiff long-term disability benefits because it determined that Plaintiff was "able to perform the duties of [his] usual occupation," but again the record is clear that Plaintiff never actually applied for long-term disability benefits. *See **Exhibit 1**, Plaintiff's Depo., pp. 177:18-178:5, 183:17-21 and 283:2-20.*

14.    Disputing SUF 33:    While accurate, the statement in paragraph 33 of Defendant's Undisputed Material Facts is incomplete. This was the first time Petco sought to

engage Plaintiff in any interactive communication or to understand the nature of his medical status and restrictions and their effect on his ability to perform the essential functions of his job. There was no "discussion;" rather, the communications were all in writing. *See **Exhibit 1**, Plaintiff's Depo., pp. 211:24-212:8 and 213:8-24.*

15.     Disputing SUF 34:     Plaintiff engaged in a number of communications with Petco regarding his return to work. He repeatedly informed Petco that he could perform the duties of his job. No one from Petco ever informed Plaintiff that it believed any of his restrictions posed a problem in terms of his job performance nor did anyone from Petco indicate precisely how any of the restrictions prevented Plaintiff from managing a Petco store, a job he had held for approximately seven (7) years. Furthermore, Plaintiff had three times provided information from Dr. Nunez to Petco and he had never before been asked for any clarification, making it clear that Petco's questions were an attempt to justify refusing to return Plaintiff to work rather than a sincere desire for more information. *See **Exhibit 1**, Plaintiff's Depo., pp. 32:5-20, 95:15-22, 100:25-102:21, 115:6-12, 133:22-136:2, 155:3-21, 185:8-15, 185:25-186:11, 188:8-189:17, 191:5-14, 193:7-11, 209:24-210:17, 213:8-24, 285:5-7 and 293:2-294:1; see also **Exhibit 7**, Plaintiff's Declaration; see also **Exhibit 2**, Puente-Sandoval Depo., pp. 32:25-34:5 and 57:2-58:12.*

16.     Disputing SUF 36:     While Petco reached out to ask for clarification on four of Plaintiff's restrictions, none of those restrictions impacted in any way Plaintiff's ability to perform the essential functions of his General Manager job. Plaintiff informed Petco personnel that he was able to perform the essential functions of the General Manager job without accommodation. *See **Exhibit 1**, Plaintiff's Depo., pp. 135:7-19, 192:22-193:11, 196:25-197:8, 199:5-200:14, 201:10-25 and 202:23-205:5; see also **Exhibit 2**, Puente-Sandoval Depo., pp. 28:9-30:22; see also Deposition of Shaunteah Radcliffe ("Radcliffe Depo."), pp. 17:12-19:7, 29:20-31:22, 32:10-24, 34:7-22, 35:21-37:21, 38:14-42:18, 44:2-45:2, 45:24-46:23, 71:10-72:15 and 86:2-89:3, attached hereto as **Exhibit 8**; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 15-16 and 18.*

17.    Disputing SUF 37:    When Plaintiff informed Petco that he did not require accommodation and was able to perform the duties of his job, Petco never offered any rebuttal. Petco never informed Plaintiff what duties of his job it believed he was unable to perform in light of his restrictions and it did not suggest any accommodation to him. *See **Exhibit 1**, Plaintiff's Depo., pp. 221:7-14, 222:3-223:6, 224:9-14 and 225:11-226:13; see also **Exhibit 8**, Radcliffe Depo., pp. 46:1-23, 58:7-59:2, 60:23-61:17 and 74:8-75:9.*

18.    Disputing SUF 38:    Petco was perfectly able to determine that it could return Plaintiff to work with the restrictions suggested by Dr. Nunez because it returned another employee to a store manager position with even more severe limitations and restrictions. Petco employee Charlene Block was employed as a General Manager, the same job held by Plaintiff. She testified that she was returned to work while she was on crutches with a broken ankle. Furthermore, Petco's Leaves Department even concedes that there are numerous circumstances where employees with restrictions are afforded accommodations without having to submit an Accommodations Packet. *See Deposition of Charlene ("Block Depo."), pp. 4:16-25, 5:23-6:3, 7:10-10:18, 11:19-12:22, 15:16-17:6 and 17:13-19:23, attached hereto as **Exhibit 9**; see also Block Depo. Ex. 65, attached hereto as **Exhibit 10**; see also **Exhibit 2**, Puente-Sandoval Depo., pp. 26:9-24, 27:2-25 and 36:18-37:19; see also **Exhibit 8**, Radcliffe Depo., pp. 82:5-19 and 82:24-84:25.*

## II.    ADDITIONAL MATERIAL FACTS ("AMF")

Plaintiff submits that the following facts are relevant and material to the Court's consideration of Defendant's Motion:

A.    Plaintiff began treating with Dr. Nunez in 2010 and she diagnosed him with fibromyalgia. Plaintiff suffered from fibromyalgia from the time Dr. Nunez began seeing him in 2010 until she stopped seeing him in 2016. He was able to work that entire time except during his flare in 2015. *See **Exhibit 4**, Dr. Nunez Depo., pp. 6:13-8:18 and 43:17-44:3.*

B.    Fibromyalgia is a chronic pain condition and is a serious medical condition. *See **Exhibit 4**, Dr. Nunez Depo., pp. 9:22-10:25 and 11:16-18.*

C.      Persons with fibromyalgia sometimes experience a flare during which they experience more intense symptoms of pain. Flares are unpredictable and vary from patient to patient. *See **Exhibit 4**, Dr. Nunez Depo., p. 12:9-23.*

D.      A fibromyalgia flare will typically affect a person's ability to stand for too long, to walk for extended periods of time, to sit for periods of time and to lift and carry objects. *See **Exhibit 4**, Dr. Nunez Depo., pp. 13:11-15:1.*

E.      In early 2015 Plaintiff experienced a severe fibromyalgia flare. *See **Exhibit 4**, Dr. Nunez Depo., p. 20:6-12.*

F.      Dr. Nunez typically recommends a leave of absence from work or work restrictions for patients who experience a fibromyalgia flare, and she certified Plaintiff for an FMLA leave because he was unable to perform his job duties during severe flares. *See **Exhibit 4**, Dr. Nunez Depo., pp. 23:15-24:3 and 25:3-26:3.*

G.      Plaintiff was very eager to return to work in the summer of 2015 and Dr. Nunez encourages her fibromyalgia patients, such as Plaintiff, to go back work because the patients typically do better when they are active and employed. *See **Exhibit 4**, Dr. Nunez Depo., pp. 39:12-41:2.*

H.      Petco's process for returning an employee to work following a medical leave is that if the employee submits a "full duty release" releasing the employee to work without restrictions, the employee is returned to work without further ado. If the employee submits a return to work release with restrictions, the Leave team obtains feedback from the employees' supervisor and a Human Resources Business Partner regarding the company's ability to accommodate the restrictions. The Leave team is responsible for all return to work and accommodation decisions. *See **Exhibit 2**, Puente-Sandoval Depo., p. 8:5-25.*

I.      In May 2015 Plaintiff was informed by his District Manager that if he wanted to be returned to work he needed to submit a return to work release without restrictions. *See **Exhibit 1**, Plaintiff's Depo., pp. 100:25-102:17, 210:21-211:16 and 226:7-13.*

J.      When Plaintiff's return to work release with restrictions came in, in May 2015, Petco's Leave and Accommodations Specialist submitted the restrictions to Plaintiff's District Manager and Human Resources Business Partner. They determined that Petco could not accommodate Plaintiff's restrictions and informed the Leave and Accommodations Specialist. The Leave and Accommodations Specialist simply emailed the restrictions to the District Manager and Human Resources Business Partner, and subsequently informed Plaintiff that his restrictions could not be accommodated without any further detail. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 21:19-22:14, 28:1-8 and 45:14-23.*

K.      It is not uncommon for Petco to accommodate lifting and climbing restrictions, and that happens for store employees on a frequent basis. Store employees have also been provided with accommodations when they have restrictions against crouching, squatting, repetitive bending or twisting, standing and walking. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 26:9-24, 27:15-25 and 36:18-37:19.*

L.      Petco is unable to state which of Plaintiff's restrictions in his May 2015 Return to Work Release prevented him from returning to work. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 28:17-29:4.*

M.      In May 2015 Plaintiff was informed the Petco could not accommodate his restrictions, but he was not told why. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 32:23-33:4.*

N.      In reviewing the documentation regarding Plaintiff's attempt to return to work in May 2015, Petco's Employee Relations Manager wrote that: "**Why couldn't they accommodate back in May?** Most of restrictions then were physical and his job has more admin at least per JD. Seems he could have done . . . ." (emphasis original). *See Deposition of Suzanne Nordmann ("Nordmann Depo."), pp. 9:13-25, 10:6-14 and 18:20-20:1, attached hereto as **Exhibit 11**; see also Nordmann Depo. Ex. 45, p. 3, attached hereto as **Exhibit 12**.*

O.      Petco again refused to allow Plaintiff to return to work in August 2015, but cannot identify which of his restrictions prevented his return to work. Again, Petco's Leave and Accommodations Specialist submitted the restrictions to Plaintiff's District Manager and Human

Resources Business Partner and received an email simply stating that Plaintiff's restrictions could not be accommodated. *See **Exhibit 2**, Puente-Sandoval Depo., pp. 47:18-48:18 and 57:2-19.*

P.      For a third time, in November 2015 Plaintiff submitted a return to work release with restrictions. Petco's Leave of Absence and Accommodations Manager submitted the restrictions to Plaintiff's District Manager and the Human Resources Business Partner and asked them to advise as to whether the restrictions could be accommodated. *See **Exhibit 8**, Radcliffe Depo., pp. 27:13-28:13.*

Q.      For the first time, Petco decided that it needed additional information regarding four of Plaintiff's restrictions: the restriction against exposure to chemicals; the restriction on walking, sitting and standing; the restriction on repetitive hand-wrist motion; and the restriction on driving (i.e., did Plaintiff have reliable transportation to work). *See **Exhibit 8**, Radcliffe Depo., pp. 28:23-29:2, 30:2-11, 32:4-10 and 35:21-36:6; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 15-16 and 18.*

R.      The Human Resources Business Partner had no other problems with any of Plaintiff's restrictions. *See **Exhibit 8**, Radcliffe Depo., p. 39:8-11.*

S.      The General Manager job description's section on Work Environment does not note any exposure to chemicals in the work place. *See **Exhibit 3**, Plaintiff's Depo. Ex. 1, p. 6.*

T.      The General Manager position did not include any responsibility for driving, and it would be a violation of Petco policy to refuse to return an employee to work if the employee was not sure he had reliable transportation to work. *See **Exhibit 8**, Radcliffe Depo., p. 37:5-21.*

U.      Petco's Leave of Absence and Accommodations Manager is not able to state which of plaintiff's restrictions prevented him from returning from work. *See **Exhibit 8**, Radcliffe Depo., p. 86:2-11.*

V.      Believing that Petco had no intention of returning him to work, Plaintiff filed his charge of employment discrimination with the Equal Employment Opportunity Commission on November 20, 2015, and informed Petco of the charge via email. *See **Exhibit 1**, Plaintiff's*

*Depo., pp. 196:22-24, 209:7-19, 213:14-24 and 215:2-9; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 10 and 13; see also **Exhibit 8**, Radcliffe Depo., p. 55:12-16.*

W.     Petco then sent Plaintiff a Request for Accommodation Packet ("RAP") which included an Accommodation Health Provider's Certificate with numerous questions about Plaintiff's impairments and necessary accommodations for Plaintiff's physician to complete. *See* **Exhibit 8**, *Radcliffe Depo., pp. 49:12-53:20.*

X.     Plaintiff responded that the RAP documentation was a request for accommodation and he was not requesting and did not require any accommodation. *See* **Exhibit 8**, *Radcliffe Depo., p. 59:14-25.*

Y.     Petco's Leave of Absence and Accommodations Manager then emailed Plaintiff asking him if he was not requesting accommodation did that mean that the restrictions were no longer in place and that he had been released to "full duty." *See* **Exhibit 8**, *Radcliffe Depo., p. 60:8-15; see also **Exhibit 5**, Plaintiff's Depo. Ex. 10, pp. 14-15.*

Z.     Plaintiff had already submitted three return to work releases, none of his restrictions had been questioned previously and he viewed the request for clarification of the four restrictions, two of which were not even job-related, to be a pretext designed to provide an excuse not to return him to work and so he declined to provide additional information at that time, following which he was terminated by Petco. *See* **Exhibit 1**, *Plaintiff's Depo., pp. 199:5-200:14, 201:10-25, 209:15-19, 213:8-24, 229:3-5 and 229:15-24.*

AA.     Plaintiff worked successfully as a Petco General Manager for approximately five (5) years with his fibromyalgia diagnosis. *See* **Exhibit 1**, *Plaintiff's Depo., pp. 60:7-16 and 129:9-12.*

BB.     In 2016 Charlene Block, a Petco General Manager in Colorado Springs, Colorado, broker her ankle. *See* **Exhibit 9**, *Block Depo., pp. 5:8-6:9.*

CC.     Ms. Block was allowed to return to work following her injury, even though she first was in a boot and then a cast and she had to use crutches to get around. *See* **Exhibit 9**, *Block Depo., pp. 7:10-8:6.*

DD.    Ms. Block was able to perform the essential functions of her General Manager position despite her restrictions, which included no lifting, pushing or pulling and restrictions on climbing ladders and stairs. *See **Exhibit 9**, Block Depo., p. 12:4-15.*

EE.    Ms. Block was not able to help unload trucks, stock shelves or assist customers with merchandise. *See **Exhibit 9**, Block Depo., pp. 8:7-9:14.*

FF.    Ms. Block's store had approximately 15-17 employees total, and at least 3 employees were in the store at any given time. *See **Exhibit 9**, Block Depo., pp. 6:10-7:9 and 8:15-9:14.*

GG.    Ms. Block's District Manager did not express any reservations about her ability to perform her job despite her physical limitations. *See **Exhibit 9**, Block Depo., p. 13:8-17.*

HH.    Ms. Block then had ankle surgery, and following the surgery she submitted a Return to Work Release form completed by her physician. At that time, Ms. Block had restrictions on walking, standing, flying, driving, using foot controls, kneeling, crouching, squatting, and climbing ladders and stairs, but those restrictions did not affect her ability to do her job. *See **Exhibit 9**, Block Depo., pp. 15:16-16:17 and 17:13-18:21; see also **Exhibit 10**, Block Depo. Ex. 65.*

II.    Before returning to work, Ms. Block was called by a person in Petco's leave department and was asked if she was comfortable returning to work with those restrictions. When Ms. Block stated that she was, she was allowed to return to work. *See **Exhibit 9**, Block Depo., pp. 16:18-17:6.*

JJ.    With the restrictions placed on her following her ankle surgery, Ms. Block was not able to help with unloading the truck of lifting heavy items in the store. *See **Exhibit 9**, Block Depo., p. 19:15-23.*

KK.    Ms. Block was not required to complete a request for accommodation form. *See **Exhibit 9**, Block Depo., p. 24:10-16.*

LL.    The Petco store managed by Plaintiff had approximately 20-25 total employees, and there were always at least 4 employees working in the store at any given time so that there

were employees available to perform the needed manual labor of unloading the truck, shelving merchandise and assisting customers with merchandise without the need for Plaintiff to perform those tasks. *See Exhibit 1, Plaintiff's Depo., pp. 38:5-15 and 289:4-9.*

### III.    ARGUMENT

**A.    Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's FMLA Interference Claim**

Plaintiff has asserted a claim that Defendant Petco interfered with, restrained and denied him the exercise of his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, in violation of 29 U.S.C. § 2615(a). Complaint, Count III. Under the FMLA an employee returning from leave is entitled to restoration to his former position or a substantially equivalent position. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.209(e).

"To establish an FMLA interference claim, 'an employee must show that: (1) he was entitled to FMLA leave; (2) an adverse action by his employer interfered with his right to take FMLA leave; and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017)(quoting *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012)). In an FMLA interference claim the employer's intent is irrelevant. *Brown*, 700 F.3d at 1226-27.

There is no dispute that Plaintiff was entitled to and took FMLA leave that was approved by Defendant Petco. The employer's refusal to reinstate an employee returning from leave satisfies the second prong of the test. *Dalpiaz v. Carbon Cty, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). As to the third prong, an employee may be dismissed, or not restored to his position, if that action would have been taken regardless of the employee's FMLA leave. *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1180 (10th Cir. 2006). The burden is on the employer to demonstrate that the adverse action was not related to the employee's exercise of FMLA rights. *Dalpiaz*, 760 F.3d at 1132.

Petco cannot meet this burden. Plaintiff had a legal right to be restored to his former position at the conclusion of his FMLA leave in May 2015 unless he would have been removed

from the workplace anyway for other reasons. The question boils down to this: Had Plaintiff not taken leave, would he have been removed from the workplace when he presented with the temporary restrictions Dr. Nunez placed on him in May 2015? The answer is a resounding no.

Petco takes the position that Plaintiff was not able to perform his job responsibilities in May 2015. This argument fails apart for at least five reasons: (1) all of Plaintiff's job responsibilities were managerial—not manual labor—and his restrictions had no effect on his ability to perform his managerial duties; (2) any manual duties Plaintiff may have performed were not required parts of his job and were, at most, marginal to his principal duties; (3) Petco's Employee Relations Manager concluded that Plaintiff's restrictions could have been accommodated in May 2015; (4) Petco routinely accommodated restrictions similar to Plaintiff's; and (5) Petco accommodated comparable restrictions on another store manager.

Petco recites Plaintiff's restrictions and claims that Plaintiff, as a "working" store manager, could not have performed his job duties. Plaintiff's General Manager job description describes in detail the Duties and Responsibilities that inhere in the General Manager job. None them includes any manual labor. All are managerial. *DMF 1, 2.* The job description does not refer to the General Manager position as a "working" store manager and in the list of responsibilities it does not refer to moving inventory. *DMF 2.* Petco refers to the Customer Service job duty as the one that purportedly required Plaintiff to be able to lift and move around heavy items of inventory. However, the detailed description of the Customer Service duty in the job description does not require the General Manager to himself engage moving inventory. Rather, as one would expect with a General Manager, all of the enumerated duties are couched in the language of management, using words like "helping associates determine the customer's needs" and sharing product knowledge with associates." *DMF 3.* The other job duties are described in similar terms. Although the job description indicates that the ability to move merchandise of up to 50 pounds is an essential job function, the actual job functions described in the job description do not support that as an essential job function. *DMF 2.*

Nor does Plaintiff's actual experience of 7 years as a store manager. Plaintiff testified without contradiction that he was never required to move heavy merchandise. He sometimes assisted his team in unloading the truck bringing merchandise to the store or helped a customer by moving heavy merchandise when he was able to do so, But he was never actually required to do so and only did so on an occasional basis as a matter of team morale. *DMF 1, 3; AMF LL.* There were always at least four employees in the store at any given time, meaning that there was always someone to move merchandise. *AMF LL.* Clearly, this is the description of, at most, a marginal, not an essential, job function.

This view is supported by the views of Petco's own Employee Relations Manager Suzanne Nordmann.. Before she was called on to testify for Petco, Ms. Nordmann expressed her honest views in a chronology she developed. There, she candidly expressed the view that Petco could have accommodated Plaintiff's restrictions in May 2015. *AMF N.*

This is in accord with Petco's history of accommodating other employees with physical restrictions similar to Plaintiff's. Petco's own Leave team members, who are responsible for leave and return to work issues for Petco's entire workforce, testified that it is common for Petco to accommodate store employees who had restrictions on lifting, climbing, crouching, squatting, repetitive bending or twisting, standing and walking. *AMF K.* If Petco commonly makes these types of accommodations for others it could have done so for Plaintiff in May 2015 when his FMLA leave expired.

The case for that becomes compelling when the case of Charlene Block is considered. Ms. Block was a store manager, just like Plaintiff. Her store had a similar number of employees to Plaintiff's store and there were a comparable number of employees in the store at any given time. Ms. Block broke her ankle and came to work on crutches, first with a cast and then a boot. She was not able to help with unloading merchandise from the truck, move merchandise for customers, climb or do many of the other things Plaintiff was restricted from doing. Yet Ms. Block was returned to work and testified that despite her restrictions she was able to perform her essential job functions to the satisfaction of her District Manager because there were always

other employees available to perform the lifting and moving of merchandise. *AMF BB – KK.* Petco cannot attempt to distinguish Ms. Block's situation from Plaintiffs because they worked under the same job description and all return to work decisions are made by the same group—the Leave team. *AMF H; see Smothers v. Solvay Chems., Inc.* 740 F.3d 530, 540-41 (10th Cir. 2014)(differing treatment of similarly situated employee sufficient to create triable issue).

Petco argues that Plaintiff was unable to perform his job duties, but the members of the Leave team who were involved in determining whether he could return to work were unable at their depositions to specify which of Plaintiff's restrictions made him unable to return to work. Their testimony consisted of evasive assertions that they could not identify any single restriction, but that the restrictions taken as a whole made Plaintiff unfit to return to work. *AMF L.*

Petco contends that Plaintiff's subjective belief that he could perform the job duties of a General Manager is irrelevant. While that may be true in cases where medical restrictions clearly preclude the possibility of the employee performing the job duties, that is not the case here. Here, at most Plaintiff's physical restrictions affected his ability to perform duties job duties that rightfully belonged to rank-and-file store employees, not the store manager. These were duties that Plaintiff occasionally helped out with as a matter of team morale—not because they were his direct responsibility. *DMF 1 – 3; AMF LL.* Under these circumstances where physical restrictions did not directly affect Plaintiff's ability to perform his job functions, his subjective belief may have been relevant to make sure Plaintiff was comfortable returning to work, an assurance Petco sought from Ms. Block before she was returned to work. *AMF II.*

There is ample evidence for a jury to conclude that Plaintiff was fit to return to work in May 2015. Petco's refusal to return him at the end of his FMLA leave was therefore an act that interfered with and denied him his right pursuant to the FMLA to be restored to his position.

**B.    There are Disputed Issues of Fact that Preclude Summary Judgment on Plaintiff's Americans with Disability Act and New Mexico Human Rights Act Claims**

Plaintiff has asserted claims of discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the New Mexico Human Rights Act ("NMHRA")

NMSA 1978 § 28-1-1 *et seq.* Petco claims that Plaintiff refused to participate in the interactive process, thus dooming his claims, that he cannot establish that he is a qualified individual with a disability, that it did not discrimination against him because of his disability and that there is no evidence of pretext. None of these contentions have merit.

### 1. Plaintiff did not refuse to participate in the interactive process.

Plaintiff did not refuse to participate in the interactive process designed to identify possible accommodations; Petco did. "The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" *Templeton v. Neodata Servs.*, 162 F.3d 617, 619 (10th Cir. 1998)(quoting *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). Because the purpose of the interactive process is designed to determine if the employee can be returned to work and if so, under what conditions, "neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Beck*, 75 F.3d at 1135.

Here, at the conclusion of Plaintiff's FMLA leave in May 2015 Petco imposed a requirement that if he wished to be returned to work he submit a release to full duty, meaning a release from his physician without restrictions. *DMF 6; AMF I.* Instead, Plaintiff submitted a Return to Work Release filled out by his physician that contained a number of restrictions— restrictions which Plaintiff did not believe affected his ability to perform the essential functions of his job. *AMF J.* Petco's Leave team, which was responsible for processing return to work requests, simply passed those restrictions on to Plaintiff's District Manager and a Human Resources Business Partner. When the word came back that the restrictions could not be accommodated, the Leave team passed that information along with Plaintiff, informing him that he would not be returned to work and unilaterally extending his leave. Plaintiff was not told which restrictions allegedly posed a problem with his ability to perform his job; nor was Plaintiff asked if he believed there was an accommodation that would enable him to perform his job. He was simply left in limbo. *DMF 6 – 8; AMF M.* Merely passing along the message that Plaintiff could not be accommodated is inconsistent with the purpose of the interactive process: to

conscientiously explore possible accommodations. *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 819 (9th Cir. 1999).

Plaintiff attempted to go to the next step in the return to work process by emailing his Regional Manager. However, no dialogue on his return to work occurred. *DMF 8.* There was no breakdown in the interactive process because there was no interactive process at all: Plaintiff let Petco know what his restrictions were and Petco said he could not return to work.

In August 2015 when Plaintiff's extended leave was set to expire he was again unable to submit a return to work authorization without restrictions. His physician for a second time completed a Return to Work Release with restrictions. Again, the Leave team submitted the restrictions (which were comparable to his earlier restrictions) to the District Manager and Human Resources Business Partner. The Leave team was again informed simply that the restrictions could not be accommodated. *DMF 11.* No further detail as to which restrictions were at issue or why they could not be accommodated was provided. *AMF O.* Again, Plaintiff was simply informed that he would not be returned to work. Again, there was no interactive process.

It was not just Plaintiff who was not informed of which of his restrictions caused him not to be able to return to work. The Leave team was not informed either. Indeed, Leave team personnel are not able to state now which restrictions were a problem, instead saying only that it was no single restriction but all of the restrictions taken together. The failure of an employer to engage in the interactive process violates the ADA if the result is a failure by the employer to determine what actions it needs to take the accommodate the employee. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000). A jury could find that is what occurred here.

In late 2015 for a third time Plaintiff had his physician complete a Return to Work Release listing his restrictions and submitted it to Petco. His restrictions were similar to, but somewhat less restrictive than his prior restrictions (lifting restriction of 25 lb. rather than 10 lb., walking/standing/sitting restriction of two hours at a time rather than 30 minutes). This time, however, Petco asked him for more detail on four of his restrictions—restrictions that had been in place previously, but that Petco had not had the interest to inquire further about. The

restriction on driving and the restriction against exposure to chemicals had no application to Plaintiff's position with Petco. *AMF P -R.* Plaintiff's job description's Work Environment section did not mention any risk of exposure to chemicals. *AMF S.* Driving was not part of his job and the Leave team agreed that declining to return Plaintiff to work because of his driving restriction would violate Petco policy. *AMF T.* Petco's inquiries into the other two restrictions were equally specious. Plaintiff's physician wrote restrictions on walking, sitting and standing "up to two hours" on repetitive hand, write or elbow motion. These restrictions also do not appear to affect any of Plaintiff's job requirements as set forth in his job description (*See DMF 1 – 3*) and, accordingly, are not job related.

Petco relies on *Templeton v. Neodata Servs.*, 162 F.3d 617 (10th Cir. 1998), to claim that Plaintiff failed to engage in the interactive process. However, in *Templeton* the employee completely refused to authorize her physician to complete a certification regarding her ability to return to work and no certification was provided. *Id.* at 618. Here, by contrast, Plaintiff's physician completed and Plaintiff submitted Return to Work Releases three times before being asked any questions about his restrictions and that when it did ask it asked about non-job-related restrictions led Plaintiff to believe that Petco had no good faith interest in returning him to work. It is fundamental to the interactive process that communications be in good faith. *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004). Because the restrictions that Petco was inquiring about had no impact on Plaintiff's ability to perform his job, his refusal to provide additional information regarding them does not implicate the interactive process. Plaintiff cannot be blamed for refusing to engage in the interactive process because Petco completely failed to engage in good faith interactive discussions.

## 2. There are issues of material fact as to whether Plaintiff was a qualified individual with a disability.

Petco argues that Plaintiff could not have performed the essential functions of his job with or without reasonable accommodation or, in the alternative, that he "could have easily obtained a return-to-work form indicating that he had no work-related restrictions; but he did

not." Motion at 21. As explained above, Plaintiff was given two choices: either submit a physician's fitness for duty certification certifying that he had <u>no</u> restrictions at all or complete the Return to work Release form provided by Petco. *DMF 6, 8; AMF H, I.* Plaintiff was required to have his physician complete a Return to Work Release form each time he sought to return to work. The form indicates a whole host of potential restrictions that the physician is asked to indicate whether or not the employee has. There is no indication on the form that some of the potential restrictions are not job-related and that the physician can therefore ignore them. Plaintiff's physician duly completed the form indicating all of Plaintiff's restrictions, whether they potentially affected his ability to perform his job duties or not. *DMF 6.* As argued above in connection with Plaintiff's FMLA claim, those restrictions did not affect his ability to perform the essential functions of his job. *See pp. 13 – 16, supra.*

Petco may argue that Plaintiff's job description includes as an "essential function" the ability to "Move merchandise up to 50 pounds" and that Plaintiff was unable to perform that duty with his restrictions. *DMF 1 – 3 AMF LL.* That is the only one of the seven essential job functions listed in the job description that has a physical component. The other essential job functions include such duties such as "Interact professionally and effectively . . . with all professional contacts"; "Hire, train, develop, manage and motivate a sales team . . . ."; "Independently prioritize and accomplish multiple management tasks . . . ."; "Exercise good business management and personnel management skills . . . ."; Meet and manage store profitability projections . . . ."; and "Have an interest in animal welfare." *See DMF 2.*

The only one of those essential job functions that sticks out as being non-management is the ability to move up to 50 pounds of merchandise. *See DMF 1, 2. 16.* Plaintiff was never required to move merchandise and that there were always employees available in the store to move merchandise when necessary. *AMF 1 – 3; AMF LL.* Factors that courts consider in determining whether a particular job function is an essential one are: whether "the reason the position exists is to perform that function," there are a limited number of employees available among whom the function can be distributed, and whether the function is highly specialized so

that only the employee in question can perform the function. *Eldredge v. City of St. Paul*, 809 F.Supp.2s 1011 (D.Minn. 2011)(quoting 29 C.F.R. § 1630.2(n)(2). Past and current work experiences, the amount of time spent performing the function and the consequence of not requiring the individual to perform the duty are also relevant. *Haas v. Vill. of Hinsdale*, 1004 U.S.Dist. LEXIS 16758 (N.D.Ill Aug. 20, 2004).

The General Manager position does not exist to move merchandise. Plaintiff was never <u>required</u> to move merchandise and there were always other employees available to perform that function. *AMF LL.* The fact that Petco permitted Charlene Block to return to work when she was unable to move merchandise (*see AMF BB – KK*) is further evidence that moving merchandise is not an essential job function. *Petroza v. Autozone*, 536 F.Supp.2d 679 (W.D.Tex. 2008)(employer offered reasonable accommodation when it allowed employee with back injury to ask coworkers for assistance in performing duties outside his medical restrictions). Therefore, there is a jury question as to whether this requirement is truly an essential job function. *Turner v. Hershey Chocolate USA*, 440 F.3d 604 (3d Cir. 2006)lack of mention of function in job description along with evidence employees spent little time doing that function in past presented jury question as to whether it was essential function). There is also evidence that Petco could easily have accommodated Plaintiff by having other store employees move merchandise, as it did for Ms. Block and apparently for numerous other employees when it accommodated various physical restrictions on lifting, climbing, sitting, standing, walking and the like. *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 820-21 (9th Cir. 1999)(fact employer has accommodated other employees is persuasive evidence that same accommodations are reasonable); *Hunt-Golliday v. Metropolitan Water Reclamation Dist.,* 104 F.3d 1004, 1013 (7th Cir. 1997)(same.)

> **3. There are issues of material fact as to whether Plaintiff was subjected to discrimination on the basis of his disability.**

Petco claims that there is no evidence that it discriminated against Plaintiff due to his disability—fibromyalgia. To the contrary, there is evidence sufficient to send this case to a jury.

All of the evidence referred to above in the argument regarding Plaintiff's FMLA claim (*See supra pp. 13 – 16*) also supports the contention that Petco discriminated against Plaintiff due to his fibromyalgia. At the time of his flare up in early 2015 Plaintiff had been working for Petco successfully for years. Yet once he had his flare up and took FMLA leave, Petco declined to return Plaintiff to work despite evidence that Plaintiff could perform his essential job duties successfully, despite the fact that Petco had frequently allowed employees with lifting, walking, standing and similar restrictions to return to work and despite the fact that Petco's own Employee Relations Manager was of the view that Plaintiff's restrictions could have been accommodated. *AMF K, N.* Petco accommodated Charlene Block, who had very similar restrictions to Plaintiff. *AMF BB – KK.* Ms. Block had a broken ankle, which is a condition that will resolve, while Plaintiff had a chronic condition the symptoms of which varied in an unpredictable manner. From this a jury could find that Petco no longer wanted to have to deal with Plaintiff's disability.

As further evidence, Plaintiff was told that if he wanted to return to work he needed to submit a release to "full duty" without restrictions. *DMF 6; AMF H, I.* A jury could find this suggestive of Petco's desire to be rid of an employee with a chronic condition that might affect his ability to work in unexpected ways in the future.

### 3.    There is evidence to support a finding of pretext.

Pretext is shown by evidence that demonstrates that the employer's stated reason for its actions is not worthy of belief. There is plenty of that type of evidence here. First and foremost, the evidence that Petco accommodated Charlene Block when she had similar restrictions is sufficient to allow a jury to infer pretext. *DMF 18; AMF BB -KK.* Second, the evidence shows that Petco frequently made accommodations for the types of restrictions that Plaintiff had placed on him, but claimed it could not provide those accommodations for plaintiff. *DMF 18; AMF K.* Third, Petco failed to follow its own policies in its dealings with Plaintiff. Petco was supposed to engage in an interactive discussion with Plaintiff about his return to work needs. It did no such thing. Instead, it unilaterally decided that it could not accommodate Plaintiff and simply

informed him of that decision. *DMF 6 – 8, 11; AMF J, M, O.* Fourth, Petco's own Employee Relations Manager expressed the belief that Petco probably could have accommodated plaintiff. *AMF N.* Fifth, after Plaintiff submitted his third Return to Work Release Petco asked for further information regarding four of his restrictions—but all of those work restrictions were non-work-related. *AMF P – U.* This is evidence that Petco attempted to raise false issues as impediments to returning Plaintiff to work and therefore casts doubt on Petco's bona fides. Evidence that Petco was not acting in good faith supports a finding of pretext.

### C. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Common Law Retaliatory Discharge Claim

Finally, Defendant argues that Plaintiff cannot proceed on his New Mexico common law retaliatory discharge claim (1) because he has an adequate remedy under the NMHRA, ADA and FMLA; (2) he did not identify a specific expression of public policy that is at issue; and (3) because he did not oppose any practice that public policy condemns or prohibits. None of these arguments is sound.

The fact that Plaintiff has an adequate remedy under various statutes has no bearing on whether he is entitled to proceed on his retaliatory discharge claim. Defendant cites *Aguilar v. Las Cumbres Learning Servs.*, 2008 U.S.Dist. LEXIS 69080, at *51-*52 (D.N.M. Apr. 26, 2008), which relied on *Salazar v. Furrs, Inc.*, 629 F.Supp. 1403, 1409 (D.N.M. 1986), a precedent that might have represented a reasonable *Erie* guess as to how the New Mexico Supreme Court would rule on the issue if presented with the question. However, it is no longer good law because of later New Mexico Supreme Court decisions. In *Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, P10, 117 N.M. 441, 872 P.2d 859, the New Mexico Supreme Court expressly addressed this issue, stating: "We next address Wal-Mart's argument that the tort of retaliatory discharge cannot be founded on a declaration of public policy embodies in a legislative enactment that provides its own remedial scheme." The Supreme Court answered that question as follows: "For the foregoing reasons, we hold that the remedies provided in the Human Rights Act are not exclusive and that the tort of retaliatory discharge can be founded on a

violation of Section 28-1-7(I) of the Act." 1994-NMSC-040, P13. *See also Michaels v. Anglo Am. Auto Auctions, Inc.*, 1994-NMSC-015, PP6-14, 117 N.M. 91, 869 P.2d 279(Workers' Compensation Act's anti-retaliation provision not exclusive remedy; common law claim for retaliatory discharge available); *Weidler v. Big J. Enters.*, 1998-NMCA-021, PP16-18, 124 N.M. 591, 953 P.2d 1089 (NMOSHA did not provide exclusive remedy for discharge of employee for reporting safety concerns). The New Mexico Supreme Court had made itself clear and this Court is bound to follow it.[1]Plaintiff identified specific expressions of public policy in his complaint— three statutes including the New Mexico Human Rights Act. Complaint, ¶ 52. Plaintiff identified acts that public policy would encourage: he sought to return from protected leave and he sought to return to work with a disability. This is sufficient to state a claim for retaliatory discharge.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment should be denied and this case should be set for trial.

<div style="margin-left:40%">

Respectfully submitted,

**MOODY & STANFORD, P.C.**

By: */s/ Christopher M. Moody 2018.06.01*
Christopher M. Moody
4619 Montgomery Blvd. NE
Albuquerque, New Mexico 87109
(505) 944-0033
moody@nmlaborlaw.com
*Attorney for Plaintiff*

</div>

---

[1] Defendant also relies on *Rist v. Design Ctr. At Floor Concepts*, 2013-NMCA-109, PP24-25, 314 P.3d 681. In *Rist* the plaintiff had only asserted a NMHRA claim, not a retaliatory discharge claim, and the court held only that a failure to exhaust administrative remedies barred the statutory claim.

I hereby certify that I have served a copy
of this pleading on the following counsel
of record by filing the same in the CM/ECF
filing system this 1st day of June 2018:

R. SHAWN OLLER
SARAH K. WATT
**LITTLER MENDELSON, P.C.**
Camelback Esplanade
2425 East Camelback Rd., Ste. 900
Phoenix, Arizona 85016
Phone: (602) 474-3600
Fax: (602) 957-1801


**MOODY & STANFORD, PC**

By: */s/ Christopher M. Moody 2018.06.01*